Council, my name is John Schultz. I'm from Kennewick, Washington. I'm here on behalf of the opponents, the two farmers. I'd like to reserve five minutes for rebuttal. Can you speak up louder? I will try to move myself a little closer to the speaker. That panel up and down, too, with something right underneath it, if you want to. It's doing fine, I think. There's a button that gets in the way. I'm on, I'm on, okay. We didn't know it until we got here, either. This is all new to us, too. I represent the two farmers that have made claims on these policies issued by the Federal Crop Insurance Corporation. These policies were new to the Columbia Basin, although they have existed now for about 70 years. We didn't have them until 2001. The claims involved in this case involved 2001 and 2002. Both of these farmers have received payments under these policies. The procedure is they would buy them from a local agent, who would in turn buy them from American Growers Insurance Company, who in turn would deal with the Federal Crop Insurance Corporation. Everything worked fine in 2001, and then in 2002, the American Growers declined the coverage and said they wanted repayment for what happened in 2001. These policies, when they were initially issued, started to sell them. The banks thought they would be a great deal to finance these farmers, guarantee that even out the crops that had volatile price histories. It didn't work out that way. These policies are also very, very expensive. These policies in this case would cost between $50,000 and $100,000. When you look at this case and look at it, they call them insurance policies. It's totally unlike insurance in the rest of the insurance world, where you buy an insurance policy that takes a risk. In this case, these kinds of policies, the companies and the RMA or the USDA have the right to go back and look at the policy at the time the claim is made and go back and re-evaluate everything. What gave the problem here was the American Growers filed for liquidation. The policy that the two farmers had purchased then became part of the liquidation, but prior to that, demand had been made for arbitration. That's all? There was no arbitration? The arbitration was pending. That's right. The arbitration was pending at that time on the basis that the American Growers had declined the claim. At that time, the Federal Crop Insurance Corporation was not involved. There was a demand for arbitration? First of all, they denied coverage for 2002 and requested repayment. At that point, according to the policy, they are required to demand arbitration, which is what they did. Then, before the arbitration was underway or completed, I guess completed, AGIC became liquidated. At that point, under this scheme, the Federal Crop Insurance Corporation steps in the shoes of the company. Well, just a minute. Did you or did the attorney for the farmers ever seek to compel the U.S. to come to the arbitration? No, we did not seek to compel because we don't have to seek to compel them. Why don't you have to seek to compel them? Under 9 U.S.C. 4, it would seem to me one could compel or seek to compel. Well, if we want to make a claim on the policy, under the policy, and I would urge each of you to look at the policy because if you look through the policy, you won't find American growers even named in this policy. But as a condition to make a claim on the policy, they are required to demand arbitration for any dispute of fact that is raised. And the policy says the disagreement will be resolved in accordance with the rules of the American Arbitration Association. It doesn't say might be. It doesn't say you have to do something else. If you're going to make a claim on the policy, you must demand arbitration. At that point, the FCIC had the right to become involved, and they did become involved. They became involved to the extent that they argued that they didn't want to go there, and they wanted to basically They didn't just say they didn't want to go to arbitration. They said arbitration is not proper. There's a separate procedure to resolve this dispute once AGIC went belly up. There is not. There is not.  It says in the policy there is. It says in the policy if FCIC makes decisions, then an FCIC decision has to be arbitrated. FCIC never made any decisions that was the subject of the arbitration. Not at all. Period. Nowhere. Now the government wants you to rewrite this policy. Wants you to rewrite it and rewrite the program and say that somehow, because they claim to the arbitrator, they have a right of a de novo review. That exists. I guess the problem becomes in that if I read the policy, I can't find anywhere where it says the FCIC has to come to an arbitration. And the only thing I see in the policy about the FCIC is that failure to agree with any determination they make, when they're not even at the arbitration, has to go through the provisions appealed under 7 CFR Part 11. That's what it says. Failure to agree with any factual determination by the FCIC must be resolved through the provisions of 7 FR Part 11. And, Your Honor, they made no determinations. Well, then they didn't have to come to the arbitration either because it's not in there. They didn't have to come to the arbitration. You're right. And, therefore, if they have no waiver of their immunity and they don't have to come to arbitration, you're stuck. No, that's not. Well, the Eighth Circuit has said no, that the arbitration is a condition precedent. What would these farmers have done? They could file a suit. Excuse me. They could file a suit, couldn't they, against the FCIC? No, there's no basis to file suit because they would have immediately lost because the FCIC would have been able to come in and said a condition precedent to making a claim on this policy is to demand arbitration. No, what they would do is what happened here, ultimately, which is the FCIC steps in and they make their claim to the FCIC under what they bargained for under this policy. And they go through the FCIC, and if FCIC rules against them, they can deny their claim. They then go through this process under 7 CFR Part 11. And that's what you're doing in this other proceeding that's pending. I felt I had to do that or I was afraid to lose anything. Like I also filed a claim with the liquidator, which they then waived, and there's some discussion about that in this case. But it says in the reinsurance agreement that when this company goes under, it says that the failure to perform will immediately be transferred to FCIC without further action of the company. FCIC will assume all obligations and unpaid losses. We are sitting there with this arbitration pending. The arbitrators very carefully analyzed. They assume the obligation to pay on the policy. I think that's pretty clear. But how they, when and if they're obligated to pay, they have to make a decision then. Are we going to, is there a loss that's covered by this policy? They then decided that there was not a loss, apparently, from what I can tell. Well, Your Honor, what they did was. They said we're denying, we're not going to pay anything on these years. And so then that invoked a process that you then took them through the administrative process. And the arbitrators, both of them, considered exactly the same arguments that Judge Van Sickle considered here and ruled otherwise. And I want to suggest to you that the decision by the arbitrators is not rewriting this policy, but in fact enforcing it according to its terms is the correct decision. That to allow the FCIC to then somehow go back like they claim and make a de novo or. But there had never been a determination when AGIC went belly up. There had been no determination. Well, AGIC had determined in the one case that the farmer didn't have a proper crop history and in the other case that the farmer had too many acres of potatoes and so on, both of which were wrong. And both of which I think any fair trier of fact would have determined it wrong. But what the FCIC is, they didn't want to go before someone from the American Arbitration Association. They made a tactical decision. And the tactical decision they made was we don't want to do what this policy says. I should have been more careful in my choice of words. There had been no determination by the arbitrators when AGIC went bellied up. That is correct. There had been no determination. If there had been a determination by the arbitrators before AGIC went belly up, then I think you would have a pretty good argument. I have a good argument anyway. I had an argument that both arbitrators found exactly had merit. And if you allow them to rewrite... Let me change this discussion just a little bit. Did you argue in front of the district court that this contract was ambiguous? No. Did you argue that it was then unambiguous and could be interpreted as a matter of law? Yes. So I am now to interpret this contract as a matter of law? Yes. And all the facts are in here? Yes. So to you, there is no ambiguity in this contract? No. And there never was, Your Honor, unless you allow them to rewrite this policy and agreement to say... Well, just a minute. You rewriting it, I have a district judge who's looked at it. He found it was unambiguous, and he made a determination. And you say it was... Two arbitrators. I understand, two arbitrators. But I now have a district judge in front of me who's made that. I just want to make sure you're suggesting that this is a clear and unambiguous agreement for which I can make a clear and unambiguous idea of what it says. You certainly can. Let's take this one step further. We sent you a request for supplemental briefing. You did. We did. And we essentially asked whether or not the United States had waived its sovereign immunity with respect to arbitration. Yes. And they absolutely didn't have. And to suggest that this... Your Honor, only Congress can waive. Yes, and Congress did, Your Honor. Where did Congress do that? Where did they do that? Okay, in 7 U.S.C. 1507. First of all, they did in 7 U.S.C. Section 1506. They say that the FCIC is subject to suit. In fact, they say that the district court has sole jurisdiction, exclusive jurisdiction against the FCIC. Then as far as it says, the Congress has directed the FCIC to contract with organizations for services relating to loss adjustment. It specifically directed it. And that's Congress, not the USDA. USDA would probably say, no, they don't want to deal with, as they have said now, they don't want to deal with the American Arbitration Association. They want their own in-house arbitrator to hear this, which is what they ultimately forced on us here. Congress said that in 7 U.S.C. 1508, that the corporation may provide for adjustment and payment of claim for losses. The rules prescribed by the corporation shall establish standards to ensure that all claims for losses are adjusted to the extent practical in a uniform and timely manner. They then pass this statute, or they then promulgate this contract, which has been in existence for a long time and has been interpreted by cases throughout the country in the agricultural areas that say the arbitration will be conducted by the American Arbitration Association on any issues of fact that are determined by the company. And in this case, that was the only determination that had been made, is the determination made by American growers for which the arbitration was sought. And then they want to say that simply because, well, they filed for insolvency, that somehow now this policy is rewritten, and you do have to rewrite it to change it. On a reinsurance of insurance policy, we don't have one here, but in the regular reinsurance world, if you have a contract with an insurance company and they have a reinsurance policy, you don't automatically get coverage by the reinsurer except by its own policy, do you? Well, there is reinsurance policy here. You do not get insurance that does not automatically come to benefit the underlying insured unless it agrees with the reinsurance policy itself, correct? That's right. In fact, in this particular matter, this says that when we're going in, we're doing what we can with the underlying insurance, and we're really two phases away from that, but let's just call AGIC the underlying insurance. Even then, the contract says that we have to, failure to agree with any factual determination by the FCIC must be resolved through their proceedings. But in this case, the disagreement is with AGIC, and FCIC steps into their shoes. That's what they've said. That's what this record is replete with. That's what they told the Nebraska courts. There was some question about the Nebraska liquidators. There was no claim in this case against AGIC. The claim was on the policy, which right according to its face, and questions about privity, I think, are solely answered when it says, the only party that pays this claim is the FCIC, if you meet it. The Eighth Circuit said they might not even be invited to the party, and they still have to pay. But now to say, well, we're going to let them go back and rewrite it. We're going to change it. We're going to permit them to do apparently what they want to do by way of forum shopping. I'd like to save the rest of my time. I have very little. You don't have any more. Yes, you've gone over your time, Counsel. May it please the Court, Counsel, Rolf Tangle on behalf of the United States. Last Wednesday, Your Honors asked for some supplemental briefing on the issues of sovereign immunity, jurisdiction, and an update on the administrative cases that are currently pending before Judge Van Sickle. After the administrative review, the appellants have brought suit again back in district court, and those cases are currently before Judge Van Sickle. I trust that Your Honors received the briefing on Friday. I appreciated the opportunity to address the sovereign immunity. He didn't really address it in your blue brief. You're right, Your Honor. I made a mistake. And what I did is I treated jurisdiction and sovereign immunity together as one. I lumped them together. And that's why after reading Park Place, I was happy to be able to come back and readdress the issue of sovereign immunity separate from jurisdiction. So what's the argument for sovereign immunity here then? Well, the sovereign immunity issue is- Even in light of Park Place, because Park Place is unique circumstances. Park Place is unique and difficult reading. However, in Park Place, it's very clear that the fact that you have a forum under 1506D, the fact that you have a forum does not waive sovereign immunity. There needs to be an additional waiver of sovereign immunity. So what we have in this-and that's why I think it's applicable, Your Honor. In this case, what we have is we have 1506D- So we have the district court had jurisdiction here, 1331, correct? The district court had jurisdiction, as I read Park Place, the district court had jurisdiction to say there is no jurisdiction or waiver of sovereign immunity with respect to arbitrators. I don't believe- The district court-the case was properly in the district court. I have to say- Under 1331. I have to say- He just couldn't enter a judgment against the United States if it lacked sovereign immunity. I mean, if it hadn't waived sovereign immunity. That's correct, Your Honor. The way that I read Park Place, which I thought was quite interesting, is that the court found that with respect to the issues raised by the United States, it had jurisdiction, but with the issues raised to confirm the arbitration order, it did not have jurisdiction. That's why I'm hedging- The only reason the court had jurisdiction over the suit by the United States was that it had jurisdiction under Section 1345, which allows the United States to go and sue in any district court. Yes. That's the only reason. Right. That's exactly right, Your Honor. My understanding is that 1345 is the basis upon which, in Park Place, the court determined it had jurisdiction. Well, so here you have 1331, and you have the waiver-I mean, you have the government-not the government. You have the provision that allows the corporation to be sued and to be sued. That's right. Which is, to some extent, a waiver of sovereign immunity. It's not, Your Honor. It's a form. It provides the opportunity to-if you have another waiver of sovereign immunity and you're going to bring suit against the FCIC, the proper place to bring- Okay, so here it was they could bring a suit against the FCIC if they had exhausted their administrative remedies. That's right, Your Honor. That's right. So then they could bring a suit. Right. And for that, there's a waiver of sovereign immunity. There is. Title VII U.S.C. Section 6999 indicates that if you exhausted your administrative remedies, then you can sue pursuant to the Administrative Procedures Act in a district court, in which-in this case, before Judge Van Sickle. And that's how we are there right now. So why isn't the argument here just simply that they didn't exhaust their remedies? The case is over. Your Honor, I did argue that they have failed to exhaust their administrative remedies. That's been basically one of the issues from the very beginning. And whether you look at it as sovereign immunity or exhaustion, it's just that they can't recover. Yes. And I think you probably-Your Honor has hit the nail on the head with respect to my confusion about whether to argue jurisdiction or sovereign immunity. In the case of Park Place, there was a presumption that you had a valid arbitration agreement. And we don't have that here. And I touched on that in the supplemental briefing. We're one step away from not having sovereign immunity, which that doesn't quite make sense because sovereign immunity should be the first thing that we discuss today. So the United States position is unless the appellants can come up with some statute that says the United States has waived sovereign immunity with respect to the arbitration, this case should be over. I argued it in my blue briefing under the issue of jurisdiction, that the arbitrators never had jurisdiction because they didn't go through the process to bring the United States to the table. I think Your Honor cited it at 9 U.S.C. Section 4. There were four cases that Judge Van Sickle relied on, two of them Supreme Court authority, two of them Ninth Circuit authority, Buckeye Checking and Prima Paint, which essentially stands for the U.S. Supreme Court authorities. Well, let me just ask you this. If Judge Van Sickle said, well, they're not a party to this arbitration agreement, why don't they just end the whole thing right there? Well, Your Honor, I think that would have... Why do you have to go on and decide whether they waive sovereign immunity or anything? It's just there's not a party to an arbitration agreement. The case is over. I think Judge Van Sickle is giving alternative reasons to support his granting of the United States motion for summary judgment. Frankly, I raised the issues. The Court, I think, could have stopped if he said no sovereign immunity or lack of jurisdiction, but he went further. He did go through each of the elements to determine that this case was not properly before the arbitrators, that the arbitrators didn't ever have jurisdiction because we weren't party to a contract. And then he went further to say, and if you look at the contract, even if the United States was found to be party to this contract, Section 13A, or Paragraph 13A, says that we will receive a different treatment under the contract than if these are determinations made by the AGIC, which was the underlying insurance company. The key throughout has been that the United States believes, and I think Judge Van Sickle believes, that the proper approach is after the exhaustion of administrative remedies, that then there is a waiver of sovereign immunity under Section 6999 of Title VII that allows an APA review for arbitrary and capricious review of the administrative record. Those administrative records have been provided. That review is ongoing, and it's my anticipation that Judge Van Sickle will rule based on cross motions for summary judgment after an October hearing date. So what if they had, AGIC had went into insolvency after the arbitration? Well, much tougher case for the United States, Your Honor. I think that was the last question Judge Van Sickle asked me in the, if you look at the transcript, and I gave him almost the same answer. If we would have had a final arbitration based on the insurance carriers, and then the United States came in pursuant to liquidation, that would have been a more difficult case. Thank you, Your Honor. Thank you, Counsel. All right, the case of Olson v. United States will be submitted, and this session of the Court will adjourn for today. All rise. This Court for this session stands adjourned.
judges: Canby, Brunetti, Smith N. R.